UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHEN BUSHANSKY,<br><br>Plaintiff,<br><br>vs.<br><br>THIRD POINT REINSURANCE LTD., SIDDHARTHA SANKARAN, JOSEPH L. DOWLING III, RAFE DE LA GUERONNIERE, GRETCHEN A. HAYES, MEHDI A. MAHMUD, JOSHUA L. TARGOFF, DANIEL V. MALLOY, and MARK PARKIN,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Stephen Bushansky ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1. This is an action brought by Plaintiff against Third Point Reinsurance Ltd. ("Third Point" or the "Company") and the members of Third Point's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Third Point will merge with Sirius International Insurance Group, Ltd. ("Sirius Group") through Third Point's wholly owned subsidiary, Yoga Merger Sub Limited ("Merger Sub") (the "Proposed Transaction").

2. On August 6, 2020, Third Point and Sirius Group issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated August 6, 2020 (the "Merger Agreement") to merge Third Point with Sirius Group. Under the terms of the Merger Agreement, each Sirius Group stockholder will have the right to elect to receive one of the following options, for each share of Sirius Group common stock they own: (1) $9.50 in cash (a "cash election"); (2) 0.743 of a Third Point share and a two-year contingent value right ("CVR") which, taken together, guarantee that on the second anniversary of the closing date, the electing shareholders will have received equity and cash of at least $13.73 per share (a "share and CVR election"); or (3) $0.905 in cash, a fraction of a Third Point common share, a fraction of a Series A preference share of Third Point, 0.190 of a 5-year warrant issued by Third Point, and $0.905 aggregate principal amount of an upside share instrument issued by Third Point (a "mixed election") (the "Merger Consideration"). The Proposed Transaction is valued at approximately $788 million.

3. On October 23, 2020, Third Point filed a Form 424B3 Prospectus (the "Prospectus") with the SEC. The Prospectus, which recommends that Third Point stockholders vote in favor of, among other things, the issuance of Third Point common stock to Sirius Group stockholders in connection with the Proposed Transaction (the "Share Issuance"), omits or misrepresents material information concerning, among other things: (i) Third Point's, Sirius Group's and the combined company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, J.P. Morgan Securities LLC ("JP Morgan"); and (iii) J.P. Morgan's potential conflicts of interest. Defendants authorized the issuance of the false and misleading Prospectus in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Third Point's public stockholders will be irreparably harmed because the Prospectus' material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Share Issuance. Plaintiff seeks to enjoin the stockholder vote on the Share Issuance unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company maintains its U.S. operations office in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Third Point.

9. Defendant Third Point is a Bermuda corporation, with its principal executive offices located at 3 Waterloo Lane, Pembroke, Bermuda, HM 08 and its U.S. operations office located at 101 Hudson Street, 37th Floor, Jersey City, NJ 07302. The Company writes property

and casualty reinsurance business. Third Point's common stock trades on the New York Stock Exchange under the ticker symbol "TPRE."

10. Defendant Siddhartha Sankaran ("Sankaran") serves as Chairman of the Board and has been a director of the Company since August 2019.

11. Defendant Joseph L. Dowling, III ("Dowling") has been a director of the Company since November 2019.

12. Defendant Rafe de la Gueronniere ("de la Gueronniere") has been a director of the Company since November 2013.

13. Defendant Gretchen A. Hayes ("Hayes") has been a director of the Company since May 2018.

14. Defendant Mehdi A. Mahmud ("Mahmud") has been a director of the Company since August 6, 2020.

15. Defendant Joshua L. Targoff ("Targoff") has been a director of the Company since December 2011.

16. Defendant Daniel V. Malloy ("Malloy") has served as Third Point's Chief Executive Officer ("CEO") since May 2019 and as a director of the Company since August 2019.

17. Defendant Mark Parkin ("Parkin") has been a director of the Company since November 2013.

18. Defendants identified in paragraphs 10-17 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

19. Sirius Group is a Bermuda exempted holding company with offices in Stockholm, New York and London. Sirius Group, with $2.4 billion of total capital and roots dating back to 1945, is a global multi-line (re)insurer. Sirius Group provides a fully diversified set of tailored

risk products to clients in approximately 150 countries, including health and travel products to consumers through its two managing general underwriters, ArmadaCare and International Medical Group.  Sirius Group's common stock trades on the Nasdaq Global Select Market under the ticker symbol "SG."

20.     Merger Sub is a Bermuda exempted company limited by shares and a wholly owned subsidiary of Third Point.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

21.     Third Point is a holding company domiciled in Bermuda.  Through its reinsurance subsidiaries, the Company provides property and casualty reinsurance products to insurance and reinsurance companies worldwide.  The Company offers a broad range of reinsurance products while maintaining a disciplined underwriting approach.  During periods of extremely competitive or soft reinsurance market conditions, Third Point's strategy is to be selective with regard to the amount and type of reinsurance it writes and conserves its risk-taking capital for periods when market conditions are more favorable from a pricing and terms and conditions perspective.  The Company's sole operating segment is Property and Casualty Reinsurance.  As of December 31, 2019, Third Point had common shareholders' equity of $1.4 billion, total capital of $1.5 billion and total assets of $3.4 billion.

22.     On August 6, 2020, Third Point announced its second quarter 2020 financial results, including net income for the quarter of $124 million, or $1.33 per diluted common share, compared to net income of $53.1 million, or $0.57 per diluted common share, in the second quarter of 2019. Additionally, during the quarter the Company achieved net underwriting income of $2.4 million, as compared with net underwriting loss of $1.7 million in the same period of 2019, and net

investment income of $137.2 million, as compared with $69.1 million in the same period of 2019.

Defendant Malloy commented on the second quarter results, stating:

> We were very pleased with our second quarter results with a return on equity for the quarter of 10.1%. Our combined ratio for the second quarter was 98.3%, of which 7.0 percentage points, or $9.9 million, was attributable to the ongoing impacts of COVID-19. Our diluted book value per share at the end of the quarter was $14.37. Our investment portfolio had a significant bounce back in the second quarter with a 5.8% return on the consolidated investment portfolio with significant contributions from our investment in the Third Point Enhanced Fund as well as from our opportunistic credit investments that we made at the end of the first quarter. Our shift in business mix into higher margin property and specialty lines is benefiting from improving market conditions and with historically low interest rates, we expect to benefit from our differentiated investment strategy. Our capital position remains strong and we are well positioned to continue to deliver increasing shareholder value from both underwriting and investments.

**The Proposed Transaction**

23.     On August 6, 2020, Third Point and Sirius Group issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> HAMILTON, Bermuda, Aug. 6, 2020 -- Third Point Reinsurance Ltd. (NYSE: TPRE) ("Third Point Re"), a specialty reinsurer, and Sirius International Insurance Group, Ltd. (Nasdaq: SG) ("Sirius Group"), a global multi-line insurer and reinsurer, today announced they have entered into a definitive agreement for Third Point Re and Sirius Group to combine in a cash and stock transaction.
>
> The transformational transaction will create a global company with approximately $3.3 billion of tangible capital, to be renamed SiriusPoint Ltd. ("SiriusPoint"), that will be ideally positioned to pursue a range of significant expansion opportunities in the insurance and reinsurance market.
>
> This combination joins two highly complementary businesses with a shared strategic vision to create a leading global company providing insurance and reinsurance solutions to clients and brokers located in almost 150 countries. SiriusPoint will be a diversified company with an attractive business profile and a strong balance sheet.
>
> Third Point Re will finance the transaction through a combination of cash-on-hand; Third Point Re equity issued to Sirius Group shareholders; Third Point Re equity issued to Daniel S. Loeb, CEO and Chief Investment Officer of Third Point LLC, and currently Third Point Re's largest individual shareholder, pursuant to an agreement to purchase approximately $50 million worth of SiriusPoint shares at closing; and if necessary, other debt or equity financing. The transaction is

expected to be accretive to earnings per share and return on equity in year one following the close.

Third Point Re's newly named non-executive Chairman of the Board, Siddhartha (Sid) Sankaran, a highly experienced insurance industry executive, will lead SiriusPoint as Chairman and Chief Executive Officer post-closing.  He has been a member of Third Point Re's Board since August 2019, is currently the Chief Financial Officer of Oscar Health, and previously served as Chief Financial Officer and Chief Risk Officer of American International Group, Inc. Third Point Re's current CEO, Dan Malloy, will remain a senior underwriting executive of SiriusPoint following the closing.

Mr. Sankaran said: "We are excited to create a powerful new entity that focuses on underwriting first but strives for excellence in its investment results.  This transaction further strengthens our reinsurance operations and positions us to enter lines of business with higher risk-adjusted returns to achieve underwriting profitability.  Combining with Sirius Group accelerates our continuing objective to deliver consistently strong book value per share growth over the long-term.  Our new scale and global platform, diverse franchise, and enhanced financial profile will enable us to provide tremendous value to clients, brokers, and shareholders.  I look forward to working with Sirius Group's terrific and dedicated team."

New Strategic Investment Portfolio Partnership with Third Point LLC

SiriusPoint will also have a reconstituted strategic partnership with Third Point LLC, under which SiriusPoint will access a range of products managed by Third Point LLC, including its flagship fund strategy, as well as new and existing fixed-income products.  Third Point LLC will also help oversee SiriusPoint's investment portfolio allocation and a diversified range of third-party traditional asset managers to drive enhanced investment returns, while remaining within traditional property/casualty reinsurance investment risk parameters.

Key Transaction Benefits

*Anticipated Strategic Benefits*

- Strong global presence and longstanding relationships with clients and brokers, with expanded distribution through Lloyd's, Bermuda, and the United States
- Refocused underwriting strategies in key U.S. and European (re)insurance markets
- Superior product capabilities and relationships in Accident and Health (A&H), property, liability, and specialty lines
- Key partnerships with managing general underwriters (MGUs) for health and travel

- Experienced management team and a company with a long history and deep roots, focused on shared entrepreneurial culture

*Anticipated Financial Benefits*

- Financially attractive transaction for shareholders, with accretion to EPS and return on equity expected in year one following the transaction close
- Strong capitalization and financial flexibility, with strong regulatory and rating agency capital ratios at close which are expected to grow over time
- Pro forma tangible capital of approximately $3.3 billion and pro forma LTM gross written premiums of $2.5 billion as of June 30, 2020
- Reduced investment volatility and greater diversification, with investment portfolio composition similar to peer reinsurers at close
- Greater critical mass and improved access to capital markets to support growth, with diversified investor base

<u>Leadership and Governance</u>

Mr. Sankaran will lead the combined company as Chairman and CEO. Kip Oberting, Sirius Group's President and CEO, will be stepping down from his role at the transaction close.

The SiriusPoint Board of Directors will comprise the current Third Point Re Board at the time of closing, with the addition of two new Board members: Rachelle Keller from Sirius Group and Peter W. H. Tan from CM Bermuda Limited, Sirius Group's current majority shareholder, and an affiliate of CMIG International Holding Pte. Ltd. (together with CM Bermuda Limited, "China Minsheng Investment Group").

In addition, Third Point Re's former Lead Independent Director, Steven Fass, will join the company as Vice Chairman. Mr. Fass is also a former Chief Executive Officer of Sirius Group. He will work closely with Mr. Sankaran and senior members of the Sirius Group team in the integration of the businesses.

Third Point LLC's founder Daniel S. Loeb said, "This transaction fulfills our vision to move Third Point Re up the quality curve by adding diversified insurance lines to our existing business, thus improving returns on capital and reducing insurance volatility, expanding our investment strategy from a single manager model to reduce investment volatility, and creating critical mass to support both internal growth and future acquisitions. I am confident that this transaction will benefit both customers and shareholders of Third Point Re and Sirius."

Meyer (Sandy) Frucher, Non-Executive Chairman of the Board of Sirius Group, said: "This strategic business combination is the result of a lot of hard work and the collaborative efforts of the Sirius Group Board, management team and CMIH and is a win-win for both Sirius Group and Third Point Re. I would especially like to acknowledge and thank Kip Oberting and Gene Boxer for their dedication and

tireless efforts to ensure the successful resolution and conclusion of the firm's strategic review process."

Mr. Tan, Chairman of CMIG International Holding Pte. Ltd., said: "We think this is a terrific outcome that leaves a better, stronger competitor in the market. We are proud to continue as investors."

Terms of the Transaction

- Sirius Group shareholders will have the ability to elect one of three options as consideration for each of their shares: 1) $9.50 in cash per share; 2) 0.743 of a Third Point Re share and a two-year Contingent Value Right (CVR) which, taken together, guarantee that on the second anniversary of the closing date, the electing shareholders will have received equity and cash of at least $13.73 per share; or, 3) an aggregate of $0.905 in cash, a fraction of a Third Point Re common share, a fraction of a Series A Preference Share of Third Point Re, 0.190 of a 5-year warrant issued by Third Point Re, and $0.905 aggregate principal amount of an upside share instrument issued by Third Point Re.
- China Minsheng Investment Group, Sirius Group's majority shareholder, has agreed to select the third option and will receive $100 million in cash and approximately 58 million Third Point Re shares in addition to Series A Preference Shares, warrants, and other securities.
- Based on the closing price of Third Point Re stock on August 5, 2020, the transaction is valued at approximately $788 million.
- In addition, Third Point Re shareholders will be protected from up to $100 million of net incremental COVID-19 related losses at Sirius Group incurred in certain circumstances for three years following the closing.
- China Minsheng Investment Group has also agreed to a 9.9% voting cap and standstill limitations that will eliminate for any historical SiriusPoint stakeholder concerns relating to Sirius Group's governance and access to capital markets.

Approvals and Timing to Completion

The agreement has been unanimously approved by both companies' Boards of Directors.  It is subject to approval by shareholders of both companies and customary regulatory approvals. Sirius Group's majority shareholder, CM Bermuda Limited, and its parent company, CMIG International Holding Pte. Ltd., have already entered into a binding agreement to vote in favor of the merger transaction, as has Mr. Loeb, as Third Point Re's largest individual shareholder.  Both parties have agreed to a customary lock-up of their shares following the closing.

The transaction is expected to be completed during the first quarter of 2021.

**Insiders' Interests in the Proposed Transaction**

24.     Third Point insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Third Point.

25.     Notably, certain Company insiders have secured positions for themselves with the combined company.  For example, pursuant to the Merger Agreement, defendant Sankaran will be appointed President and CEO of the combined company, and the Company's Chief Operating Officer, David Junius, will be appointed Chief Financial Officer of the combined company. Moreover, each of the defendant directors will serve on the board of the combined company following completion of the Proposed Transaction.

26.     Further, Third Point insiders stand to reap substantial financial benefits for securing the deal with Sirius Group.  For example, in connection with his employment as CEO of the combined company, defendant Sankaran will be entitled to receive, among other forms of compensation, the following equity awards: (i) a restricted share award with a grant date fair value of $3,000,000 following the public announcement of the execution of the Merger Agreement; (ii) a restricted share award with a grant date fair value of $5,500,000 following the closing of the merger; (iii) an award of 400,000 options to purchase common shares, par value $0.01 per share, of the combined company following the closing of the merger with an exercise price equal to the higher of (x) $15.00 per share or (y) the closing price on the grant date; and (iv) an annual equity award equal to 475% of defendant Sankaran's annual salary during his employment term, the first of which will be granted in calendar year 2021.

**The Prospectus Contains Material Misstatements or Omissions**

27. The defendants filed a materially incomplete and misleading Prospectus with the SEC and disseminated it to Third Point's stockholders. The Prospectus misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Share Issuance.

28. Specifically, as set forth below, the Prospectus fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) Third Point's, Sirius Group's and the combined company's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, J.P. Morgan; and (iii) J.P. Morgan's potential conflicts of interest.

***Material Omissions Concerning Third Point's, Sirius Group's and the Combined Company's Financial Projections***

29. The Prospectus omits material information regarding Third Point's, Sirius Group's and the combined company's financial projections.

30. For example, the Prospectus sets forth that in arriving at its fairness opinion, J.P. Morgan:

> reviewed certain internal financial analyses and forecasts prepared by the managements of Sirius and Third Point Re relating to their respective businesses, as well as the business plan and forecasts of the combined company resulting from the merger (the "Combined Company Business Plan") prepared by the management of Third Point Re, which reflects the estimated amount and timing of the cost savings and related expenses and synergies expected to result from the merger. . . .

Prospectus at 120. The Prospectus fails, however, to disclose the forecasts contained in the Combined Company Business Plan prepared by the management of Third Point, which reflects the estimated amount and timing of the cost savings and related expenses and synergies expected to result from the merger.

31. Additionally, with respect to the projections of Third Point and Sirius Group, the Prospectus fails to disclose: (i) earnings per share ("EPS"); (ii) book value of equity per share ("BVPS"); (iii) tangible book value of equity per share ("TBVPS"); (iv) dividend streams; and (v) dividend streams that could be paid subject to leverage constraints.

32. The omission of this material information renders the statements in the "Unaudited Prospective Financial Information" section of the Prospectus false and/or materially misleading in contravention of the Exchange Act

***Material Omissions Concerning J.P. Morgan's Financial Analyses***

33. The Prospectus omits material information regarding J.P. Morgan's financial analyses.

34. The Prospectus describes J.P. Morgan's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of J.P. Morgan's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Third Point's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on J.P. Morgan's fairness opinion in determining whether to vote in favor of the Share Issuance.

35. With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Prospectus fails to disclose: (i) the individual multiples and metrics for each of the companies observed in the analysis; (ii) Sirius Group's EPS for the year ending December 31, 2021; (iii) Sirius Group's share price to BVPS as of June 30, 2020; (iv) Sirius Group's share price to TBVPS as of June 30, 2020; (v) Third Point's EPS for the year ending December 31, 2021; (vi) Third Point's BVPS as of June 30, 2020; and (vii) Third Point's TBVPS as of June 30, 2020.

36. With respect to J.P. Morgan' *Selected Transaction Analysis*, the Prospectus fails to disclose: (i) the individual multiples and metrics for each of the transactions observed in the analysis; (ii) Sirius Group's EPS for the year ending December 31, 2021; (iii) Sirius Group's BVPS as of June 30, 2020; and (iv) Sirius Group's TBVPS as of June 30, 2020.

37. With respect to J.P. Morgan' *Dividend Discount Model Analysis* for Sirius Group, Third Point and the combined company, the Prospectus fails to disclose: (i) the dividend streams for the calendar years 2021E through 2022E for both Sirius Group and Third Point; (ii) the dividend streams that could be paid during calendar years 2021E through 2022E subject to leverage constraints; (iii) quantification of the inputs and assumptions underlying the discount rates ranging from 10.75% to 11.75% and 13.00% to 14.00% for Sirius Group and Third Point, respectively; and (iv) quantification of the terminal values for each of the analyses.

38. Without such undisclosed information, Third Point stockholders cannot evaluate for themselves whether the financial analyses performed by J.P. Morgan were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Share Issuance. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which J.P. Morgan's opinion and analyses should factor into their decision whether to vote in favor of or against the Share Issuance.

39. The omission of this material information renders the statements in the "Opinion of J.P. Morgan Securities LLC, Financial Advisor to Third Point Re" and "Unaudited Prospective Financial Information" sections of the Prospectus false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning J.P. Morgan's Potential Conflicts of Interest***

40. The Prospectus fails to disclose material information concerning the potential conflicts of interest faced by J.P. Morgan.

41. The Prospectus sets forth:

> During the two years preceding the date of its opinion, neither J.P. Morgan nor its affiliates have had any other material financial advisory or other material commercial or investment banking relationships with Third Point Re or Sirius. J.P. Morgan anticipates that it and its affiliates will arrange and/or provide financing to Third Point Re in connection with the merger for customary compensation.

*Id.* at 126. The Prospectus fails, however, to disclose the amount of compensation J.P. Morgan expects to receive in connection with arranging and/or providing financing to Third Point in connection with the merger.

42. Additionally, the Prospectus fails to disclose the specific details of all discussions pertaining to J.P. Morgan and its affiliates arranging and/or providing financing to Third Point in connection with the merger, including who participated in all such communications, when they occurred and their content.

43. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

44. The omission of this material information renders the statements in the "Opinion of J.P. Morgan Securities LLC, Financial Advisor to Third Point Re" and "Background of the Transaction" sections of the Prospectus false and/or materially misleading in contravention of the Exchange Act.

45. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Prospectus. Absent disclosure of the foregoing material information prior to

the stockholder vote on the Share Issuance, Plaintiff and the other stockholders of Third Point will be unable to make an informed voting decision in connection with the Share Issuance and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

46. Plaintiff repeats all previous allegations as if set forth in full.

47. During the relevant period, defendants disseminated the false and misleading Prospectus specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

48. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Prospectus. The Prospectus was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Third Point's, Sirius Group's and the combined company's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, J.P. Morgan and J.P. Morgan's potential conflicts of interest. The defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

49. The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder would consider them important in deciding how to vote on the Share Issuance.

50. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

51. Because of the false and misleading statements in the Prospectus, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

52. Plaintiff repeats all previous allegations as if set forth in full.

53. The Individual Defendants acted as controlling persons of Third Point within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Third Point, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Prospectus at issue contains the unanimous

recommendation of each of the Individual Defendants to approve the Share Issuance. They were, thus, directly involved in the making of the Prospectus.

56. In addition, as the Prospectus sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Prospectus purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Third Point's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Third Point, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Share Issuance, unless and until defendants disclose and disseminate the material information identified above to Third Point stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 4, 2020

**WEISSLAW LLP**

By */s/ Mark. D. Smilow*
Mark. D. Smilow
Richard A. Acocelli (to be admitted *pro hac vice*)
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: msmilow@weisslawllp.com

*Attorneys for Plaintiff*